## BROWN v. THE STATE.

1. On the trial of one charged with murder, the judge restricted the jury to a consideration of whether the killing was murder or justifiable homicide. Error was assigned upon the charge, on the ground that according to the prisoner's statement the law of voluntary manslaughter was involved, and that it was erroneous to instruct the jury in such manner as to exclude from their consideration the theory of voluntary manslaughter. *Held,* that the statement of the accused did not present such a theory.

(a) It is unnecessary to make any ruling upon the contention that if the statement had presented the theory of voluntary manslaughter it would have been erroneous for the judge to instruct them in such manner as to exclude the question from their consideration.

2. The only remaining ground of the motion for new trial which complains of the charge of the court is without merit.

3. The evidence was sufficient to support the verdict.

NOVEMBER 9, 1915.

Indictment for murder. Before Judge Jones. Rabun superior court. September 9, 1915.

*T. L. Bynum* and *R. E. A. Hamby*, for plaintiff in error.

*Clifford Walker*, attorney-general, *Robert McMillan*, solicitor-general, and *Mark Bolding*, contra.

ATKINSON, J. Will Brown was indicted for the offense of murder, and was convicted without recommendation. According to the evidence offered by the State, the relation between the accused and deceased before the homicide was friendly. The accused had recently received a wound in his side at the hands of another person, and during the illness that ensued occupied the bed of the deceased by invitation. On the night of the homicide a dance was in progress in the neighborhood, which the deceased attended. He was seated in a chair, talking to another man, when the accused entered the room, drew a pistol from the pocket of his overalls, and shot the deceased while he was so seated and talking, and unarmed. The accused did not introduce any evidence, but made a statement to the following effect: On the night of the homicide he was standing near a house talking to a woman, she having both hands on his shoulders. The deceased, coming from behind the house, said, "What you doing here, got my woman barred up like this?" At the same time the deceased "grabbed" and "slammed" the accused against the house two or three times. The accused said, "Don't do that; you are liable to break some of the stitches in my side;" whereupon the deceased slammed the accused on the ground and said, "If you cross my path any more to-night, I am going to kill you." The accused then "went on up where the game was going on," and, at the request of another person, loaned fifty cents on a "gun," and upon receiving the "gun" put it in his pocket. About that time some one proposed, "Let's go to the dance;" to which the accused assented. What followed after reaching the dance was described by the accused thus: "When I walked in the door, this fellow Sweet [the deceased] he jumped up with a knife in his hand like that [indicating], and come at me like that [indicating], and says, 'What did I tell you?' Just as he come at me I shot him and backed out the door. Sweet throwed his hands up

like that [indicating], and went out the door, and I backed out the door and come out. I went on and told this woman I had shot Sweet; and she said, 'You better leave here, because you are a stranger, and them boys will mob you;' so I got on the railroad-track and kept walking."

1. The judge in his charge did not submit the question of voluntary manslaughter, but restricted the jury to the consideration of whether the killing amounted to murder or justifiable homicide.· Error was assigned upon the charge. It was contended that the prisoner's statement, which the jury had the right to accept in preference to the sworn testimony, presented the theory of voluntary manslaughter; and that while the judge was not bound to charge the law of voluntary manslaughter in the absence of an appropriate request, he ought not to have told the jury in effect that there was nothing in the case upon which to base a verdict of voluntary manslaughter. This contention involves a question of substantive law, namely, did the statement of the accused present the question of voluntary manslaughter? and also a question of practice, namely, if the statement alone presented such question, was the judge authorized to instruct the jury in effect that they need not consider it? Under the view we take of the case, it is not necessary to render any decision on the latter question. In order to reduce an unlawful killing of a human being from murder to manslaughter, the killing must have been without malice and the result of sudden, violent, impulsive passion, supposed to be irresistible, produced by an actual assault upon the person killing or an attempt by the person killed to commit a serious personal injury upon the person killing, or other equivalent circumstance. Penal Code, § 65. ˙ The slayer must have acted under the impulse of "hot blood," as distinguished from ill will. *Jenkins* v. *State,* 123 *Ga.* 523 (51 S. E. 598); *Williams* v. *State,* 125 *Ga.* 302 (54 S. E. 108). While there was conduct of the deceased towards the accused, in the early part of the evening, that in law amounted to an assault, the accused did not seem to have regarded it as such or to have become inflamed as a result thereof. He went on as if nothing had occurred. While he obtained a pistol, his act in doing so was merely casual, as was also the going to the dance at the suggestion of those with whom he was associated at the "game." According to his own story he would not have shot the deceased after reaching the place of the

dance except for an assault that the latter was then making upon him with a knife. The accused did not regard the killing as the culmination of any previous difficulty. Under the circumstances as related by him, we can not see that the theory of voluntary manslaughter was involved, and the judge did not err in charging as complained. As stated above, it is unnecessary to make any ruling on the question of practice, after reaching this conclusion.

2. In the only other special ground of the motion for new trial error was assigned upon an excerpt from the charge, on the ground that it was not a correct statement of the law, and was susceptible of prejudicing the jury, and was calculated to restrain them from being the judges of the law of the case. The criticism upon the charge is without merit. Elaboration on this ground of the motion is unnecessary, and further reference thereto will be forborne.

3. The evidence was sufficient to support the verdict, and the discretion of the trial judge in refusing a new trial will not be disturbed.

*Judgment affirmed. All the Justices concur, except Beck, J., absent.*